CHARLES BAKER, Plaintiff in Error, *vs.* H. K. TERRELL *et al*
Defendants in Error.

ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

Section 8 of the Act relating to Uses and Trusts (*Com. Stat. 'chap.* 32) applies to real property only.

Where lands are conveyed subject to a mortgage given by the grantor, he may insist on sub. jecting them to the payment of the incumbrance; and if he voluntarily or upon compulsion pays the debt secured by the mortgage, he may be subrogated to all the rights of the mortgagee, and can enforce the mortgage against the land.

*By the Court*—ATWATER, J.—The Defendant in Error in this case moves to dismiss the writ, on the ground that no notice was given to the Defendant, within ten days after the issuing of the writ, that the same had been sued out, as required by rule 33, found on *p.* 7, *vol.* 2, *Minn. Rep.* Under this rule we hold that a party is entitled to a dismissal of the writ, where the Plaintiff in Error has not complied with its provisions, unless he shall be able to offer a satisfactory excuse therefor, or show facts, which, in the judgment of the Court should relieve the party from the effect of a neglect to com. ply with the rule. In this-case the only excuse offered by the attorney for the Plaintiff in Error is, that he was ignorant of the existence of such rule. This cannot be regarded as a sufficient excuse, and the writ of error must be dismissed.

After the dismissal of the writ as above, the cause was reinstated upon the Calendar upon motion of the Plaintiff in Error, he having shown facts upon which the Court relieved him from the effect of his neglect to comply with the rule referred to. Whereupon the cause was argued upon the merits.

vol. viii.—25

Points and Authorities of Plaintiff in Error.

I.—H. E. Baker having furnished the money to Jane F. Terrell, with which she purchased the mortgage and notes, made her H. E. Baker's trustee. It was not necessary that the trust should be created by writing. *Steere vs. Steere*, 5 *Johns., C. R.*, 1. Even if it had been an express trust; but it being an implied or resulting trust, it is never necessary. 2 *Mad. Ch.* 98; *Brentford vs. Burr*, 2 *Johns., C. R.*, 407; *R. S., p.* 382. *secs.* 6, 7, 8.

II.—Hoyt and Lund, being purchasers with notice of the trust and sale to Plaintiff, take the mortgage with the equities, and stand in Mrs. Jane F. Terrell's place, and must answer and execute the trust. 2 *Mad. Ch.*, 103 *and notes, and cases there cited*; *Murray vs. Betton*, 1 *Johns. C. R.*, 566; *Shepherd, survivor, &c., vs. McEwen, et al.*, 4 *Johns., C. R.*, 137.

The only question that can arise in this case is not between debtor and creditor, for there is no creditor in the case, but that between a principal and his agent, a *cestui que trust* and his trustee. If the trust was denied, the question might arise, how far parol proof is admissible to support and prove the trust. But the demurrer admits the trust.

III.—The purchase of the notes and mortgage, through Mrs. Terrell, was no satisfaction, and was no merger. If Baker had bought up the notes and mortgage, while he was the owner of the equity of redemption, the doctrine of merger would arise, and in that case, unless the intention was manifest to keep the legal and equitable estates separate, the equitable estate would merge in the legal and sink; or if a warrantee deed had been executed by Baker, not excepting the mortgage, the doctrine of merger would arise. *Gardner vs. Astor*, 3 *J. C. R.*, 56; *James vs. Johnson*, 6 *J. C. R.*, 417; *Storr vs. Ellis*, 6 *J. C. R.*, 393; but this record presents no such case.

Points and authorities of Defendants in Error.

I.—The writ of Error was irregularly issued, and the same,

with all proceedings under the same, should be dismissed. *See affidavit.*

II.—It appears from the face of the complaint that H. E. Baker is a necessary party to the suit. *Shields vs. Barrows,* 17 *How.,* 130; 21 *ib.,* 409.

The action is brought for the purpose of foreclosing a certain mortgage made by him, and to apply the proceeds upon certain notes made by him, and outstanding against him.

III.—Two causes of action are improperly united. The 1st cause of action is to cancel certain alleged fraudulent transfers, and for a decree vesting in the Plaintiff the title and ownership of certain notes and the mortgage securing them.

And the 2d to foreclose said mortgage, and decree a sale of said mortgaged premises.

IV.—It appears from the face of the complaint, that the Plaintiff is not the legal owner of the notes and mortgage sought to be foreclosed. *Comp. Stat., p.* 382, *secs.* 7, 8 *and* 9.

V.—It appears from the face of the complaint, that the mortgage was paid out of the debtor's funds—(1 *Hill. on Mortgages,* 461)—and was therefore extinguished.

VI.—It appears from the face of the complaint that H. E. Baker had no interest in the notes and mortgage, which he could transfer.

Because the notes were made by himself, and he had acquired all the interest in said notes, which he assigned to the Plaintiff, by paying them with his own funds. No man can hold a note against himself. *Byles on Bills, p.* 5.

VII.—It appears from the face of the complaint that the only relief to which the Plaintiff is entitled is a judgment at law against Jane F. Terrell, or a decree charging her separate estate for the amount of money alleged to have been advanced by the assignor of the Plaintiff to pay off said mortgage.

D. Newell, Counsel for Plaintiff in Error.

Sanborn & Lund, Counsel for Defendants in Error.

*By the Court*—Emmett, C. J.—There can be but little doubt that the chapter of our statutes concerning uses and

trusts (*Comp. Stat.*, *chap.* 32), relates to real property only. Consequently, that section which abolishes the trust previously implied in favor of a person who pays the consideration for a grant made to another, does not necessarily apply to transactions concerning personal property. The trust against which the section referred to is directed, results from a presumption the most reasonable, and has been recognized and enforced by innumerable decisions in equity. We do not question the wisdom of the Legislature in regard to this enactment, but as the section is in derogation of a well settled principle or rule in equity, we are not disposed to extend its application beyond what is fairly embraced in its terms. Equity is synonymous with justice, and its cardinal principles are as immutable as truth itself; and although a statute may interpose, as in this instance, to prevent in certain cases an acknowledged equity from being enforced, yet the principle itself remains, and should be carried into effect whenever the statute will permit.

There is so little doubt, also, that mortgages are to be considered and treated as personal and not real property, that it will hardly be necessary to cite authorities to sustain the proposition.

Where one person pays the consideration for the purchase of property made in the name of another, the natural presumption is, until the contrary is shown, that he intended the purchase for his own benefit. 2 *Story's Eq.*, 445. And assuming, where personal property is thus purchased, that a trust will still result in favor of the party paying the consideration, notwithstanding the statute above referred to,—let us inquire whether the case before us comes within the rule.

H. E. Baker having given a mortgage on certain lands, to secure the payment of notes given by a copartnership, of which he was a member, assigned the same, subject to the mortgage, together with the rest of his property, to Hoyt, for the benefit of his creditors. He afterwards, through Mrs. Terrell, and in her name, purchased the notes and mortgage, and sold them again to the Plaintiff, directing Mrs. Terrell to transfer and deliver them according to his said sale; but she, instead of so doing, transferred them to said Hoyt, who re-

ceived them as said Baker's assignee.   Hoyt afterwards trans-
ferred the land, together with the notes and mortgage, to
Lund.

The Defendants insist that the purchase of the notes by
said Baker, cancelled the mortgage, and that the Plaintiff
ought not to be allowed to enforce it against the land.   Let
us see whether there is anything inequitable in what the
Plaintiff seeks to do.

We will suppose that a person after having mortgaged his
land, to secure the payment of a note or bond, conveys it to
another for a sum certain, subject, however, to the mortgage.
In such a case the grantee would take but the mere equity of
redemption, agreeing, however, tacitly, if not otherwise, either
to pay the incumbrance himself, or permit the land to be sold
to satisfy it.   Justice and equity would require that he should
do the one or the other.   And if he should take up the incum-
brance, and thus or in any other manner obtain possession of
the note or bond secured by the mortgage, no one would for
one moment suppose that he could maintain an action thereon
against the maker, his grantor, because he would have done
nothing more than it was understood and implied from his
contract, that he should do.   He would still have received all
that he purchased, and nothing has happened which was not
fully contemplated by the parties.

But let us suppose further, that the owner of the note and
mortgage, in the case suggested, should be unwilling to await
the slow process of foreclosure, and finding that the mortgagor
was perfectly solvent and possessed of a large amount of per-
sonal property not exempt from execution, should proceed
directly against and collect the claim of him by action, there
is not the least doubt equity would relieve the mortgagor,
and subrogate him to all the rights of the mortgagee.   4 *Ohio
S. R.*, 349; 2 *Denio*, 598; 9 *Paige Ch.* 445; 22 *N. Y. R.*, 438;
34 *Me.*, 299.   Indeed a more difficult question is, whether
the grantee of the equity of redemption would not be bound
to pay any deficiency or balance of the debt remaining after
the mortgaged premises were exhausted. · (*See authorities
last cited.*)

Suppose, however, that the mortgagor, in order to avoid

costs, and to save himself the inconvenience attending a threatened or actual litigation, should pay off or purchase the mortgage,—why should he be in a worse condition, as regards the right to have the incumbrance charged upon the land, than he would if forced by an action to pay? Are the un-doubted equities which attend the one course wholly lost by pursuing the other? What difference can it make to the grantee of the land subject to the incumbrance,—and why should he, in any possible contingency, get the benefit of any one's purchase of what was an acknowledged charge upon his lands? Any other may purchase and enforce the mortgage. Why may not a grantor, who has made no covenant that could estop him from obtaining an interest in the land, by a subsequently acquired title, and who has no title remaining in him into which the lien when acquired could merge? Perhaps he would not be permitted to enforce it beyond the amount actually paid by him for the claim, because his rela-tion to his grantee in such a conveyance is not unlike that of a surety; but as a surety may pay off the debt without wait-ing to be sued, and have a remedy over against the principal, I see no reason why a grantor, under such circumstances as those above mentioned, may not have the same rights. If the mortgage had been given by any one else, there would be no question of the grantor's right to purchase it. And when we consider that, if he submitted to an action, he would be no more likely to recover against the land the costs assessed against him therein than would an ordinary surety who awaits an action before paying the debt, we may, I think, fairly conclude that as his only safety in very many instances may lie in voluntarily paying the debt which the mortgage secures, he may do so without prejudice; and that it would be grossly unjust not to give him a remedy over against the land.

It is objected that in such cases the mortgagor, if he pays, is only cancelling a debt of his own. This is true in one sense, but yet the debt is one of which, as between him and a gran-tee, who takes subject to the mortgage, the land is pledged to the payment, before calling on the mortgagor; and, be-sides, it may with equal truth be said that the mortgagor but

pays his own debt, whether he pays the incumbrance volun-
tarily or at the end of an execution.   But it does not follow,
in either case, that the grantee should receive any benefit
from such payment, or that the land in his hands is thereby
relieved of the incumbrance.

The question then arising is, whether there is anything in
the case before us to distinguish it from that which we have
been suggesting.   We do not think that there is an essential
difference.   The deed of assignment is not before us ; but an
assignee, for the benefit of creditors, takes only the title which
the assignor had at the date of the assignment, which, in
this instance, was but an equity of redemption, or the mere
right to acquire the legal title by paying off the incumbrance.
This was the entire interest assigned to him—all that he took
or had any right to claim ; and as the interest assigned was
only that which remained after paying the mortgage out of
the proceeds of the land, it could make no real difference to
him, whether it is held by one person or another.

The Defendants, by demurring, admit that the transfer of
the notes and mortgage by the trustee of H. E. Baker to said
Baker's general assignee, was without consideration—with
full notice of the prior assignment to the Plaintiff, and with
intent to defraud him ; and that Lund subsequently pur-
chased them of Hoyt, with full knowledge that they had been
previously assigned by Baker, the *cestui que trust*, for a valu-
able consideration.   All these facts are fully stated in the
complaint.   Why the trustee should thus transfer them to
Hoyt, we may imagine, but what right Hoyt had to them,
under the circumstances, we cannot discover, unless it should
appear that they had been purchased with money or property
belonging to him as Baker's assignee, for the benefit of cre-
ditors.   No such claim, however, is set up by the defence,
although it is admitted that Hoyt took them as assignee of
H. E. Baker.   For aught that appears to us, the purchase of
the incumbrance by H. E. Baker was a perfectly fair transac-
tion, made with money acquired by him, after his general as-
signment to Hoyt, and for the sole purpose of protecting him-
self against an action by the mortgagee. That it was not made
in the interest of, or in aid of the general assignment to Hoyt,

is evident from his having effected it through the medium of a trustee. And unless the purchase was made for the benefit of the assignment, or with funds belonging thereto, the assignees could have no manner of rightful claim to the property so purchased; and would be unable to give a better title to any one else.

The judgment below is reversed. Let the case be remanded to the District Court, with leave to Defendant to answer within twenty days after service of a copy of the order to be entered hereon.